**U.S. SUGAR CO., INC., Appellant,**

v.

**AMERICAN SWEETENERS, INC., Savannah Foods & Industries, Inc. and Norfolk and Western Railway Company, Appellees.**

Superior Court of Pennsylvania.

Argued Feb. 16, 2000.
Filed April 3, 2000.

worked. *See Gordon,* 338 A.2d at 655–56.

Kathleen P. Carmen, Media, for appellant.

Paul D. Keenan, Philadelphia, for appellee.

Before CAVANAUGH and BECK, JJ. and CIRILLO, President Judge Emeritus.

BECK, J.:

¶ 1 In this appeal we address, *inter alia*, the applicability of the Carmack Amendment, 49 U.S.C. § 11706 ("Carmack" or "the Amendment"), a federal law which limits the liability of a railroad carrying goods in interstate commerce. This appeal follows the entry of a trial court order granting judgment as a matter of law in favor of appellee Norfolk and Western Railway Company ("Norfolk") and against appellant U.S. Sugar Company, Inc. ("U.S. Sugar"). We affirm.

¶ 2 U.S. Sugar purchased sugar from American Sweeteners, Inc. ("American"). The sugar was transported, via truck, from American's headquarters in Frazer, Pennsylvania to U.S. Sugar's plant in Buffalo, New York. Sometime after the delivery, American contacted U.S. Sugar and informed it that the sugar American delivered was tainted with blue paint chips. Thereafter, U.S. Sugar filed suit against American to recover damages that included product loss, profit loss, and cleanup.

¶ 3 The contaminated sugar had been delivered to American's Frazer plant via rail service provided by Norfolk. The

paint chips were the result of a defective paint job Norfolk had performed on one of its rail cars. Because Norfolk's rail car was the source of the problem, American filed a third party complaint against Norfolk, thereby joining it in the suit.

¶ 4 Discovery in the case proceeded for nearly eight years. American filed a motion for summary judgment, which was granted in part by the trial court and which limited American's liability to U.S. Sugar to the maximum amount of the contract between the parties. On the day trial was to commence, the court learned that U.S. Sugar and American had reached a settlement one day earlier. This left Norfolk as the only defendant in the matter. Norfolk promptly moved for dismissal based on federal preemption of U.S. Sugar's claims, relying on the Carmack Amendment.

¶ 5 The trial court initially denied the motion and a jury was selected and sworn. The court then permitted the parties to submit briefs on the issue and, after argument the following morning, the court granted Norfolk's motion and entered a non-suit in the case.

¶ 6 U.S. Sugar filed post-trial motions asserting, among other things, that the trial court violated Pa.R.Civ.P. 230.1 in entering a non-suit without permitting U.S. Sugar to present its case. The trial court agreed that it had committed a procedural error and so withdrew its order. In lieu of the non-suit, the court afforded Norfolk the opportunity to raise the Carmack issue in a Motion for Judgment on the Pleadings. It also gave U.S. Sugar thirty days to respond to the motion and thereafter permitted the parties to present oral argument on the issue. Following the submission of briefs and oral argument, the trial court granted Norfolk's Motion for Judgment as a Matter of Law. That order is now before us on appeal.[1]

Our standard of review is aptly set out by U.S. Sugar in its brief. We must accept as true all of the plaintiff's well-pleaded facts and grant to it the benefit of all reasonable

---

1. The parties and the court viewed Norfolk's motion as a summary judgment motion. In light of the manner in which this case proceeded, we shall do the same.

¶ 7 Carmack was enacted in 1906 as an amendment to the Interstate Commerce Act. It governs the liability of rail carriers in actions by those whose goods are damaged during transport. *Rini v. United Van Lines, Inc.*, 104 F.3d 502 (1ˢᵗ Cir.), *cert. denied*, 522 U.S. 809, 118 S.Ct. 51, 139 L.Ed.2d 16 (1997). The Amendment has been interpreted as setting forth two primary rules of law. First, it is the sole method of relief for parties seeking damages against a rail carrier and so preempts all state claims stemming from damage or loss of goods. *Id.* at 506. Second, the Amendment limits those entitled to seek damages from a rail carrier to those parties named on the bill of lading. 49 U.S.C. § 11706 (the rail carrier is liable "to the person entitled to recover under the receipt or bill of lading"); *Rini, supra* at 504.

■ ¶ 8 The purpose underlying the Amendment has been long recognized. It is, simply, to "achieve national uniformity of the liability assigned to [rail] carriers." *Id. See also Hughes v. United Van Lines, Inc.*, 829 F.2d 1407, 1415 (7ᵗʰ Cir.1987) (statute's purpose is to "establish uniform federal guidelines designed in part to remove the uncertainty surrounding a carrier's liability when damage occurs to a shipper's interstate shipment."), *cert. denied*, 485 U.S. 913, 108 S.Ct. 1068, 99 L.Ed.2d 248 (1988).

■ ¶ 9 U.S. Sugar concedes that the Carmack Amendment sets forth the rights and liabilities of the parties to the contract of carriage, *i.e.*, the bill of lading. It also concedes that it is not named on the bill of lading between Norfolk and American.[2] However, U.S. Sugar maintains that its status as a "non-party" or "stranger" to the bill of lading makes the Carmack Amendment *inapplicable* in this case, thus allowing a direct action for negligence by it against Norfolk. U.S. Sugar asks that we ignore the Carmack case law relied upon by Norfolk since those cases concern only the rights of shippers and consignors to seek damages from a rail carrier. Where a non-shipper or non-consignor is involved, argues U.S. Sugar, Carmack is irrelevant. According to U.S. Sugar, "Carmack cannot be used by [rail] carriers as a shield to liability when its conduct affects parties outside the shipper-carrier relationship." Appellant's Brief at 13.

¶ 10 U.S. Sugar admits that no controlling case law exists to support its claim. Our careful review of its reasoning leads us to conclude that while its argument is clever and compelling, it is at the same time contrary to the well-established and often-stated purposes underlying the Carmack Amendment.

¶ 11 Courts addressing the purpose and scope of Carmack have used a variety of terms and phrases to describe it. The United States Supreme Court has noted that "every detail of the subject is covered so completely that there can be no rational doubt but that Congress intended to take possession of the subject and supercede all state regulation with reference to it." *Adams Express Co. v. Croninger*, 226 U.S. 491, 33 S.Ct. 148, 57 L.Ed. 314 (1913). The Court has deemed the Amendment an act by which "Congress superceded diverse state laws with a nationally uniform policy governing interstate carriers' liability for property loss." *New York, New Haven & Hartford R.R. v. Nothnagle*, 346 U.S. 128, 73 S.Ct. 986, 97 L.Ed. 1500 (1953). Courts have characterized the Amendment as governing *all* actions against rail carriers where such actions stem from damage to goods that occurred in transit. *See Hughes Aircraft Co. v. North American Van Lines*, 970 F.2d 609,

inferences to be drawn therefrom. *Marroquin v. Mutual Benefit Insurance Co.*, 404 Pa.Super. 444, 591 A.2d 290 (1991). Where there exists no genuine issue of any material fact, we may decide the case as a matter of law. *Id.*; Pa.R.Civ.P. 1035.2. The primary

legal issue is whether Carmack applies in this case.

2. The parties apparently agree that only American was named on the bill of lading.

613 (9th Cir.1992) (Carmack "preempts any state common law action against a carrier"). *See also Hopper Furs, Inc. v. Emery Air Freight Corp.*, 749 F.2d 1261, 1264 (8th Cir.1984) (holding that all actions against a rail carrier "whether designated as tort or contract actions, are governed" by Carmack).

¶ 12 Were we to interpret Carmack in the manner suggested by U.S. Sugar, *i.e.*, that the Amendment is inapplicable where the action is brought by a stranger to the bill of lading, we would be enlarging the liability of rail carriers and countermanding the purpose of the Amendment. The limitation of rail carrier liability is the very basis for the law. *See Rini, supra*, at 505 (Carmack preempts actions that "in any way enlarge the responsibility of the carrier for loss"). Surely, permitting the common law actions of parties who at some time subsequent to the bill of lading suffered injury has the potential to open the floodgates to a myriad of lawsuits against rail carriers.[3] We agree with Norfolk's statement that under U.S. Sugar's limited interpretation of Carmack, "no rail carrier could ever rationally settle any freight claim without the legitimate fear of being subsequently sued by undisclosed parties." Appellee's Brief at 14. Because we believe it is clear from the statute—and nearly a century's worth of case law interpreting it—that a narrowing of liability for interstate rail carriers was its focus, we cannot adopt U.S. Sugar's interpretation of § 11706.

¶ 13 As an alternative argument, U.S. Sugar claims that it is entitled to pursue a Carmack action against Norfolk because it had a beneficial ownership interest in the sugar that was shipped to American's plant. U.S. Sugar relies on *Banos v. Eckerd*, 997 F.Supp. 756 (E.D.La.1998) for support. In that case, Victoria Banos entrusted some old photographs to an Eckerd drugstore for the purpose of creating a photo calendar Eckerd offered to its customers. Eckerd shipped the photographs to its Florida plant via its rail carrier, RPS. The photographs were lost and in an action by Banos against Eckerd and RPS, RPS sought dismissal of the action based on the Carmack Amendment. RPS argued that because Banos was not a party to the shipping agreement between Eckerd and RPS, her Carmack action was barred. The court rejected this claim. It found that Banos was a party entitled to make a Carmack claim because she was a consignor. The *Banos* court, relying on the dictionary, defined a consignor as "one who sends or makes a consignment; a shipper of goods. The person named in the bill of lading as the person from whom the goods have been received for shipment." *Id.* at 762. Under the facts, Banos was deemed a consignor.

¶ 14 This case is far different from *Banos*.[4] Prior to, during and after shipment of the photographs, Banos was the owner of the goods at issue. The same cannot be said of U.S. Sugar. Its interest in the goods arose after Norfolk's delivery to American was complete. It merely contracted with American for the purchase of sugar and was not involved in any manner in American's receipt of the goods via rail from Norfolk. Unlike Banos, U.S. Sugar did not "send or make a consignment," nor was it the "person from whom goods were

---

3. In a variation on its claim that Carmack does not apply, U.S. Sugar also argues that the act at issue here is the negligence exhibited by Norfolk *at the time* it improperly painted its rail cars. Thus, this is not a case of goods damaged in shipment, and Carmack is irrelevant. We do not agree. The gravamen of U.S. Sugar's claim is the damage that occurred to the sugar when it was transported by Norfolk to American's plant. In light of Carmack's policy considerations, we would not find that Norfolk owed a duty to U.S. Sugar; thus, any negligence claim made by U.S. Sugar would be defeated.

4. The facts in *Banos* differ materially from those in this case, making it inapplicable. We further note that *Banos*, a federal case from the Eastern District of Louisiana, is not binding on us in any event. Because it is unnecessary here, we decline to comment on whether we find the reasoning of *Banos* persuasive.

received for shipment." *Banos* is inapplicable here and U.S. Sugar has not presented a viable Carmack claim.

¶ 15 In claims separate from the application of the Carmack Amendment, U.S. Sugar raises several procedural issues. It argues that the trial court erred in allowing Norfolk to file what was essentially a summary judgment motion on the day of trial. Relying on case law that prohibits a party from filing a summary judgment motion once trial has commenced, U.S. Sugar claims a violation of Pa.R.Civ.P. 1035.2. *See William J. Heck Builders, Inc. v. Martin*, 315 Pa.Super. 395, 462 A.2d 253 (1983).

¶ 16 In its opinion, the trial court concedes that the timing of proceedings in this case was unusual; however, it offers a reasonable explanation for the course of events:

> While this Court recognizes that the situation was not ideal, the tenor of the case changed when Plaintiff [U.S. Sugar] settled with Defendant ... [American] on the eve of trial. The Carmack Amendment limits the liability of a common carrier to the person entitled to recover under the bill of lading. It also preempts all state claims based on the loss or damage of shipped goods. As American Sweeteners was the party listed on the bill of lading, it had a viable claim against Norfolk and Western. When Norfolk and Western suddenly found itself to be the sole party subject to a direct claim by U.S. Sugar, it immediately sought dismissal of the case. Although the timing was unfortunate, due to the particular circumstances of the case, the motion did not delay trial in violation of Rule 1035.2. In fact, going to trial without resolving the Carmack Amendment issues would have resulted in a waste of this court's time and resources.

Trial Court Opinion, 10/27/99, at 4.

¶ 17 We find the trial court's logic and legal reasoning unassailable and so reject U.S. Sugar's claim that the manner in which the case proceeded below was erroneous. U.S. Sugar is not entitled to appellate relief on this basis.

¶ 18 U.S. Sugar also asks that we find fault with the trial court's initial grant of a non-suit. U.S. Sugar insists the non-suit order constituted a violation of procedural due process. The record reflects that the trial court itself conceded that the non-suit was erroneous and promptly vacated it. Thereafter, it afforded U.S. Sugar thirty days in which to respond to the changed circumstances of the litigation and the application of the Carmack Amendment. In light of the circumstances, particularly the settlement between U.S. Sugar and American, we conclude that the trial court committed no reversible error in this regard.

¶ 19 U.S. Sugar also claims that the trial court erred in finding that American's liability was limited by the provisions of its contract with U.S. Sugar. We agree with the trial judge that this issue is moot with respect to American as American entered into a settlement agreement with U.S. Sugar and the controversy between these two parties no longer exists. Further, the issue has no relevance in this appeal since the status of Norfolk, the only remaining defendant, was properly determined under the Carmack Amendment. In sum, once American was out of the case due to its settlement with the plaintiff, Norfolk was entitled to dismissal since its presence in the case was dependent upon American's liability. Hence the trial court's ruling regarding the extent of American's liability to U.S. Sugar is irrelevant here.

¶ 20 Finally, U.S. Sugar argues that it is entitled to attorneys' fees on account of Norfolk's late motion for summary judgment. An award of attorneys' fees is appropriate where utilized as a sanction for "dilatory, obdurate or vexatious conduct during the pendency of a matter." 42 Pa.C.S.A. § 2503(7). In reviewing a fee grant or denial, we reverse only where the trial court abused its discretion. *Twp. Of South Strabane v. Pieck-*

*nick*, 546 Pa. 551, 686 A.2d 1297, 1300 n. 6. (1996).

¶ 21 U.S. Sugar does not claim obdurate or vexatious conduct, but instead argues that Norfolk's motion for dismissal at time of trial amounts to dilatory conduct warranting the award of fees. The trial judge refused to award fees for two reasons. First, it found that Norfolk initially raised the Carmack Amendment's application as far back as 1990 in the context of preliminary objections. Second, it found that the "eleventh hour settlement between Plaintiff [U.S. Sugar] and American" refocused the litigation and triggered the late request by Norfolk. Trial Court Order, 5/18/99. The trial court observed:

> With those circumstances in place, it is clear that there was no intention to raise the issue untimely nor for the purpose of delay. We cannot, therefore, find Norfolk's conduct dilatory.

*Id.*

¶ 22 In light of the unique circumstances in this case, we find no abuse of discretion on the part of the trial court in refusing to award counsel fees.

¶ 23 Because U.S. Sugar's claims are without merit, the trial court's entry of judgment in Norfolk's favor must stand. Order affirmed.