GREAT NORTHERN INSURANCE
COMPANY, Plaintiff,

v.

McCOLLISTER'S MOVING
& STORAGE, INC.,
Defendant.

No. 99–11469–NG.

United States District Court,
D. Massachusetts.

Sept. 11, 2001.

Robert W. Harrington, Law Office of Robert W. Harrington, Boston, MA, Rachel H. Prindle, Law Offices of Robert W. Harrington, Boston, MA, for Great Northern Insurance Company, Plaintiff.

Wesley S. Chused, Elizabeth M. Adler, Looney & Grossman LLP, Boston, MA, for McCollister's Moving and Storage, Inc., Defendant.

## MEMORANDUM AND ORDER

GERTNER, District Judge.

The plaintiff, Great Northern Insurance Company ("GNIC"), brings this action to recover damages against McCollister's Moving & Storage, Inc. ("McCollister's"). GNIC seeks these damages to cover losses that GNIC's insured, Orbotech, Inc. ("Orbotech") sustained after McCollister's disposed of certain computer equipment without Orbotech's permission.

The defendant now moves for summary judgment on the grounds that (1) Orbotech's and the plaintiff's claims are preempted, as a matter of law, by the Carmack Amendment to the Interstate Commerce Act of 1887, 49 U.S.C. § 14706; and (2) that plaintiff failed to file suit within two-years-and-one-day of McCollister's written disallowance of Orbotech's claim pursuant to the bill of lading. I agree with both of these arguments. Thus for the reasons set forth below, defendant's Motion for Summary Judgment [docket entry # 10] is **GRANTED** and this action is hereby **DISMISSED**.

## I. BACKGROUND

On December 23, 1996, Orbotech entered into an agreement with McCollister's for the transportation and temporary storage of Orbotech's Vision 206 Computer Circuitry Board Inspection Unit ("V206"). McCollister's issued a uniform bill of lading, which stated the V206 was received subject to McCollister's rules, regulations, rates, and charges. Specifically, the bill of lading stated,

> As a condition precedent to recovery, a claim for any loss or damage, injury or delay, must be filed in writing with carrier within nine (9) months after delivery to consignee as shown on face hereof, or in case of failure to make delivery, then within (9) months after reasonable time for delivery has elapsed; and suit must be instituted against carrier within two (2) years and one (1) day from the date when notice is given by carrier to the claimant that carrier has disallowed the claim or any part or parts thereof specified in notice. Where a claim is not filed or suit is not instituted thereon in accordance with the foregoing provisions, carrier shall not be liable and such claim will not be paid.

McCollister's subsequently received the V206 from another shipper in Staffordville, Connecticut, and shipped the equipment to its facility in North Reading, Massachusetts, for storage in its warehouse.

In May 1997, Orbotech discovered that McCollister's disposed of the V206 without Orbotech's permission. On May 8, 1997, Orbotech submitted a timely claim to McCollister's via a letter facsimile requesting the value of the scrapped V206.

On May 9, 1997, McCollister's vice president, Eric Isenberger ("Isenberger"), denied Orbotech's claim by letter, stating that McCollister's had scrapped the V206 at the direction of Orbotech. McCollister's letter stated:

> Based on [the above] facts we must deny your claim of $220,000 to recoup the loss of this machine. I would be happy to discuss this matter with anyone at your office, or if you choose, interview any of the people I have mentioned. I too value the long relationship [between Orbotech and McCollister's].

Isenberger then sent a second letter on May 19, 1997, which stated that the scrapping of the V206:

> [I]s ... unfortunate for both our companies [sic] perspectives. This was definitely a case of human error, although we haven't been able to fully determine the guilty party. I do not believe it is in anyone's best interest to point fingers at this point, as what's done is done.... We have spoken with our insurance carrier, Vanliner Insurance, regarding the missing piece. As the shipment was delivered to storage, the basic storage coverage would be all we had in place. The maximum liability on storage shipments is limited to sixty (60) cents per pound. In the case of this shipment we are talking about 6,358 pounds or $3,814.80.

Pursuant to an agreement between Orbotech and GNIC, GNIC paid Orbotech for the scrapped V206 and inherited Orbotech's claims and demands against McCollister's. GNIC filed suit against McCollister's in the Massachusetts Superior Court on May 25, 1999. Subsequently, on July 9, 2000, pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1441, McCollister's removed the case to this Court.

## II. DISCUSSION

In ruling on a summary judgment motion, the Court must view the record and draw inferences in a light most favorable to the non-moving party. *Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*,

657 F.2d 482, 486 (1st Cir.1981). Fed. R.Civ.P. 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, the issue is simply whether there is *any* evidence upon which a jury could properly proceed to find a verdict in the plaintiff's favor. *Caputo v. Boston Edison Co.,* 924 F.2d 11, 13 (1st Cir.1991) (citing *De Arteaga v. Pall Ultrafine Filtration Corp.,* 862 F.2d 940, 941 (1st Cir.1988)).

"The Carmack Amendment to the Interstate Commerce Act of 1887 governs the liability of common carriers for loss of damage to goods shipped or transported in interstate commerce." *Calka v. North American Van Lines, Inc.,* 2001 WL 434871 *1, 2001 U.S. Dist. Lexis 5157 *4 (S.D.N.Y.) (citations omitted). Essentially, Congress intended the Carmack Amendment "to create a national uniform policy regarding the liability of carriers under a bill of lading for goods lost or damaged in shipment." *Analog Devices v. Allied Van Lines, Inc.,* 1996 WL 208463, *2, 1996 U.S. Dist. LEXIS 5649 *6 (D.Mass.1996) citing *Adams Express Co. v. Croninger,* 226 U.S. 491, 505, 33 S.Ct. 148, 57 L.Ed. 314 (1913).

GNIC's complaint alleges four counts against McCollister's, including breach of contract, negligence, breach of the duty of good faith and fair dealing, and violation of Mass.Gen.Laws. ch. 93A. The First Circuit has held that "all state laws that impose liability on carriers *based on the loss or damage of shipped goods are* preempted." *Rini v. United Van Lines Inc.,* 104 F.3d 502, 506 (1st Cir.1997). Here, it is undisputed that the damage to the V206 occurred while in McCollister's custody after it had traveled interstate from Connecticut to Massachusetts.[1]

*Rini* specified that "[p]reempted state law claims ... include all liability stemming from damage or loss of goods, liability stemming from the *claims process,* and liability related to the payment of claims." *Rini,* 104 F.3d at 506 (emphasis added). The dispute in the case at hand deals specifically with the payment of claims. If any remedy is available to the plaintiff, therefore, it is derived from the Carmack Amendment, 49 U.S.C. § 14706.

The Carmack Amendment requires common carriers, like McCollister's, to issue a receipt or bill of lading for goods it receives for transportation. 49 U.S.C. § 14706(a)(1). Such a receipt or bill of lading allows anyone bound by the terms of the agreement to sue the common carrier for loss or damage of the goods. *Id.*

The Carmack Amendment to the ICC Termination Act of 1995, 49 U.S.C. § 14706(e)(1), specifies:

A carrier may not provide by rule, contract, or otherwise, a period of less than 9 months for filing a claim against it under this section and a period of less than 2 years for bringing a civil action under this section. The period for bringing a civil action is computed from the date the carrier gives a person written notice that the carrier has disallowed any part of the claim specified in the notice.

In the case before me, it is undisputed that the V206 was shipped in interstate commerce and that McCollister's issued a bill

---

**1.** The Carmack Amendment defines "transportation" under 49 U.S.C. § 13102(19) to include warehouses and storage. Therefore, I find that the case at hand falls within the scope of coverage under the Carmack Amendment.

of lading to Orbotech. The bill of lading issued by McCollister's stated that Orbotech would have ninety days to file a claim and two years and one day to file suit if McCollister's denied the claim. Orbotech clearly met the first requirement by making a claim on May 8, 1997. McCollister's alleges that Orbotech failed to meet the second requirement to file suit within two years and one day from the time the claim was disallowed on May 9, 1997, because the suit was not filed until May 25, 1999.[2]

The real issue here is whether the May 9, 1997, letter from McCollister's sufficiently communicated a disallowance of Orbotech's claim to trigger the limitations period specified in the bill of lading and, in turn, render this action untimely under the parties' bill of lading.

"A carrier's notice of disallowance [of a claim] must be clear, final, and unequivocal." *Burtman Iron Works v. Con–Way Transportation Services*, 97 F.Supp.2d 122 (D.Mass.2000) quoting *Combustion Engineering, Inc. v. Consolidated Rail Corp.*, 741 F.2d 533, 536 (2d Cir.1984). Here, McCollister's argues that its May 9, 1997 letter, which stated "based on these facts we must deny your claim of $220,000 to recoup the loss of this machine" was sufficiently clear, final, and unequivocal as a matter of law to disallow GNIC's claim.

GNIC seeks to avoid the Carmack Amendment by arguing that McCollister's May 9, 1997, denial of its claim was nothing more than a qualified disallowance. In support of this argument, GNIC relies on *Combustion Engineering, Inc. v. Consoli-*

*dated Rail Corp.*, 741 F.2d 533 (2d Cir. 1984).

Unfortunately for GNIC, however, the facts of *Combustion Engineering* are very different from those here. First, the letter notifying disallowance of the claim in *Combustion Engineering* indicated that (1) there was insufficient documentation to process the claim and requested further information and (2) that the plaintiff's claim "as presented" was disallowed. *Id.* at 537. Second, in the twenty-one months following the defendant's supposed disallowance of the claim in *Combustion Engineering*, the plaintiff received several status reports categorizing the claim as "active." *Id.* at 538.

The situation here is quite different. First, even though McCollister's stated that insurance would cover a certain amount of damages for the V206 in the second letter dated May 19, 1997,[3] there was no request for additional information or documentation regarding the plaintiff's claim. Second, after receiving a letter on May 9, 1997, which stated "[b]ased on these facts we must deny your claim ..." Orbotech received the May 19, 1997, letter, which never suggested that the plaintiff's case was still open, that the case would be reopened, or was still "active" in any way. This second letter cannot be reasonably interpreted to indicate that the investigation was ongoing or that more information was desired.

If anything, the subsequent correspondence via the second letter reflects McCollister's' desire to maintain a good business relationship with Orbotech:

---

2. The two year and one day suit filing limitation is fairly established as the standard in the trucking industry. *See Swift Textiles v. Watkins Motor Lines*, 799 F.2d 697, 703–04 (11th Cir.1986) *Reh'd denied*, 804 F.2d 681, *cert. denied*, 480 U.S. 935, 107 S.Ct. 1577, 94 L.Ed.2d 768 (1987).

3. Further, I note that this second letter, too, was sent more than two years and a day before GNIC filed this action.

Our goal at McCollister's is to continue that relationship and insure we deliver quality service on every order we handle. Along those lines, we have instituted a policy regarding any items we are asked to scrap. Effective immediately, nothing will be disposed of without written authorization from you or your designated staff. This authorization will include order number (ours and yours), description of the piece and serial number. Hopefully, this alone, should eliminate the problem that occurred with the V206.

Thus, the May 19, 1997, letter suggests nothing more than McCollister's' desire to stay on good terms with Orbotech by preventing similar problems from arising in the future.

■ In short, when McCollister's stated that "[it] must deny [Orbotech's] claim of $220,000 to recoup the loss of [the] machine," the claim was clearly, finally, and unequivocally disallowed. Because I find that the disallowance of Orbotech's claim was clear, final, and unequivocal, plaintiff's claim against McCollister's is untimely.[4]

## III. *CONCLUSION*

Accordingly, for the reasons stated above, the defendant's Motion for Summary Judgment [docket entry # 10] is **GRANTED** and Plaintiff's action is **DISMISSED.**

**SO ORDERED.**

4. No evidence is provided to show that Orbotech or GNIC could not—for whatever reason—meet the deadline to file suit. Neither Orbotech nor GNIC suggested any extenuating circumstance which would have prevented the filing of the suit.