**UNITED VAN LINES, INC., Plaintiff,**

v.

**Lowell E. HOMBURGER and Amy Homburger, Defendants.**

**No. 3:96CV42–P.**

United States District Court,
W.D. North Carolina,
Charlotte Division.

July 2, 1996.

Kristin K. Eldridge, Ragsdale, Liggett & Foley, Raleigh, NC, for United Van Lines, Inc.

Lowell E. Homburger, Beaufort, SC, pro se.

## AMENDED ORDER [1]

ROBERT D. POTTER, Senior District Judge.

**THIS MATTER** is before the Court on the Plaintiff's motion for summary judgment and to dismiss all counterclaims [Document # 6], filed April 24, 1996. The Defendant Lowell E. Homburger (Hereinafter Mr. Homburger) responded on May 1, 1996, and the Plaintiff replied on May 13, 1996.

### Background

The facts in this case are very simple. Mr. Homburger contracted with United Van Lines (hereinafter UVL) to move his household goods from Charlotte, North Carolina to Beaufort, South Carolina. Mr. Homburger signed the bill of lading as the shipper and, after the goods were delivered, as the consignee. (Plaintiff's Ex. 1, bill of lading.) Although the parties apparently had an understanding that UVL would send the freight bill to Mr. Homburger's new employer, the bill—for whatever reason—was never paid. Accordingly, UVL sought payment directly from Mr. Homburger. Because Mr. Homburger denies that he is liable for the freight bill, UVL has brought this suit to collect it.

### SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides,

> ... judgment ... shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c) (West 1993).

Summary judgment must be granted when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Id., Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir.1984). To attain summary judgment, the movant bears an initial burden of demonstrating no genuine issues of material fact are present. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-moving party who must point out specific facts which create disputed factual issues. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). In evaluating a summary judgment motion, district courts must consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from those facts in favor of the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). Those facts which the moving party bears the burden of proving are facts which are material. "[T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

An issue of material fact is genuine when, "the evidence ... create[s] [a] fair doubt; wholly speculative assertions will not suffice. A trial, after all, is not an entitlement. It exists to resolve what reasonable minds could recognize as real factual disputes." *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir.1985). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence from the entire record could not lead a rational fact finder to rule

---

1. The sole purpose of this Amended Order is to correct a clerical error on page 5 of the original Order. Specifically, in the quote from the Bill of Lading at § 3(a), the "from" should read "to" and the words "shall fail" should be inserted after "extended." This correction does not alter the reasoning or effect of the Order.

for the non-moving party. *Matsushita Electric Industrial Co.,* 475 U.S. at 587, 106 S.Ct. at 1356, *Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53, 91 L.Ed.2d at 273–74 (1986).

## DISCUSSION

 It is well established that once a common carrier's tariff is approved by and filed with the appropriate regulatory agency, that tariff binds both the common carrier and the shipper. The shipper must pay—and the common carrier must collect—neither more nor less than the filed tariff. The Supreme Court has recently reaffirmed this "filed rate doctrine:"

> This Court has long understood that the filed rate governs the legal relationship between shipper and carrier. In *Keogh v. Chicago & Northwestern R. Co.,* 260 U.S. 156, 163, 43 S.Ct. 47, 49, 67 L.Ed. 183 (1922), the Court explained: "The legal rights of shipper as against carrier in respect to a rate are measured by the published tariff. Unless and until suspended or set aside, this rate is made, for all purposes, the legal rate, as between carrier and shipper . . . ."

*Maislin Industries, U.S., Inc. v. Primary Steel, Inc.,* 497 U.S. 116, 126, 110 S.Ct. 2759, 2765, 111 L.Ed.2d 94 (1990). Moreover:

> the ONLY defense that can be raised to a carrier's suit for these legal charges is that the services have been paid for, that the services were not rendered, that the services were charged under an inapplicable tariff schedule, or that the rates were unreasonable.

*In re Penn Central Transportation Company,* 477 F.2d 841 (3d Cir.) (emphasis added), *affirmed,* 414 U.S. 885, 94 S.Ct. 231, 38 L.Ed.2d 137 (1973). Because Mr. Homburger raises none of these defenses, it is clear that he—as the shipper—is liable for UVL's charges. Mr. Homburger must pay, and UVL must collect, the filed rate. The fact that Mr. Homburger may have had an agreement with a third party (his employer) as to who would pay all or part of the charge is legally irrelevant *vis a vis* UVL. *See, e.g.,*

*Aero Mayflower Transit Co. v. Hankey,* 148 So.2d 465 (La.Ct.App.1963).

In fact, the bill of lading—signed by Mr. Homburger as both shipper/consignor and consignee—expressly states that:

> The shipper, upon tender of the shipment to carrier, and the consignee, upon acceptance of delivery of shipment from carrier, shall be liable, jointly and severally, for all unpaid charges payable on account of a shipment in accordance with applicable tariffs including but not limited to, sums advanced or disbursed by carrier on account of such shipment. The extension of credit to either shipper or consignee for such unpaid charges shall not thereby discharge the obligation of the other party to pay such charges in the event the party to whom credit has been extended shall fail to pay such charges.

(Plaintiff's Ex. A, bill of lading at § 3(a).) This language is lifted directly out of UVL's tariff. (Davis aff. at ¶ 6.) More importantly, the bill of lading expressly states that:

> If credit is extended by the carrier by agreeing to bill an employer or other party, and in the event that any or all charges are not paid, the owner of the goods and/or beneficiary of the services acknowledges he remains primarily liable for payment.

(Plaintiff's Ex. A, bill of lading.) Thus, Mr. Homburger is clearly liable for the freight charges and they must be paid.

 As for the amount of the charges, it is undisputed that according to UVL's tariff filed with the ICC the amount is $3,378.15. The filed tariff dictates the amount owed by Mr. Homburger even if UVL improperly quoted a different amount. For, "[i]t is well established that the shipper is chargeable with knowledge of a carrier's tariff provisions that are properly filed with the Interstate Commerce Commission" and such tariffs are incorporated into the contract between the shipper and the carrier. *Aero Trucking, Inc. v. Regal Tube Co.,* 594 F.2d 619 (7th Cir. 1979). Judgment in the amount of $3,378.15 will be entered against Mr. Homburger in favor of UVL accordingly.[2]

---

2. The Court will likewise enter judgment against

Amy Homburger, named in the complaint as Mr.

### The Counterclaims

Mr. Homburger in his *pro se* answer counterclaims for (1) "Damages in the sum of $5,754.50" for damaged freight, and (2) punitive damages for "pain and grief caused by [UVL's] inept handling of the move plus their agent's false representation that the charges would be billed to [Mr. Homburger's] employer and had received tacit and absolute approval for an unspecified sum." Presumably, these counterclaims are based on state law. However, for the following reasons, these claims will be dismissed.

 It is well established that the Carmack Amendment, 49 U.S.C. § 11707, et seq., preempts state law claims—including claims such as conversion for damaged freight, fraud, bad faith, and intentional or negligent infliction of emotional distress—such as those raised by Mr. Homburger. *See, e.g., Shao v. Link Cargo Ltd.,* 986 F.2d 700 (4th Cir.1993); *Hunter v. United Van Lines, Inc.,* 746 F.2d 635 (9th Cir.1984); *Hughes v. United Van Lines, Inc.,* 829 F.2d 1407 (7th Cir.1987); *Beers v. North American Van Lines, Inc.,* 836 F.2d 910 (5th Cir. 1988). Likewise, punitive damages are precluded. *Cleveland v. Beltman North American Co., Inc.,* 30 F.3d 373 (2nd Cir.1994). Therefore, Mr. Homburger's counterclaims warrant dismissal.

 Nevertheless, it appears that Mr. Homburger may have a claim either under the pre-January 1, 1996 Carmack Amendment (see, 49 U.S.C. § 11707, historical and statutory notes) or the post-January 1, 1996 49 U.S.C. § 14706 for actual loss or injury to the property. Because Mr. Homburger is proceeding *pro se* the Court will allow him to amend his counterclaim so that it states a federal law claim for damage to his goods. At the very least he must allege, and ultimately prove, (1) that the freight was delivered to the carrier in good condition, (2) that the freight was then delivered by the carrier in damaged condition, and (3) the amount of actual damages. *Cf., Missouri Pacific R. Co. v. Elmore & Stahl,* 377 U.S. 134, 139, 84 S.Ct. 1142, 1145, 12 L.Ed.2d 194 (1964).

### Prejudgment Interest

 The Court will allow UVL's request for prejudgment interest. Generally, "[a]n award of prejudgment interest lies within the discretion of the trial court." *Occidental Life Insurance Co. of North Carolina v. Pat Ryan & Associates,* 496 F.2d 1255, 1268 (4th Cir.1974). "This general principle, however, does not apply to actions brought to recover [charges] for shipment of freight subject to the Interstate Commerce Act." *Coliseum Cartage Co., Inc. v. Rubbermaid Statesville, Inc.,* 975 F.2d 1022, 1026 (4th Cir.1992). "To allow the [carrier] to recover without awarding prejudgment interest would be to diminish the tariff charge by an amount representing the value of the use of the money owed for the period prior to judgment." *Id.* at 1026 (quoting *Southern Pac. Co. v. Miller Abattoir Co.,* 454 F.2d 357, 362 (3d Cir.1972)). Accordingly, prejudgment interest from June 6, 1995—the date the bills became due and owing (Complaint at Ex. B, invoice)—will be allowed in this case. The Court has the discretion to determine the rate of prejudgment interest (*E.E.O.C. v. Liggett & Myers Inc.,* 690 F.2d 1072, 1074 (4th Cir.1982)) and will use the 5.88% postjudgment interest rate in effect on June 6, 1995.

**NOW, THEREFORE, IT IS ORDERED** that the Plaintiff's motion for summary judgment be, and hereby is, **GRANTED** as to the claim for $3,378.15 in unpaid freight bills plus prejudgment interest at the rate of 5.88% from June 6, 1995 as to both Defendants. The Court will defer entering a Judgment pending final resolution of Mr. Homburger's counterclaim.

**IT IS FURTHER ORDERED** that the Plaintiff's motion to dismiss Mr. Hombur-

---

Homburger's wife. Although a summons was served on February 7, 1996 no answer or other responsive pleading has been filed by her. Accordingly, the factual allegations against her are deemed admitted and default judgment is warranted. *See also, Cleckner v. Republic Van & Storage Co., Inc.,* 556 F.2d 766 (5th Cir.1977)

("[W]here a wife has acquiesced in an agreement by permitting household goods to be moved as arranged by the husband, commercial practicalities require allowing third parties to rely on agreements made by one spouse even though they involve the property of both.").

ger's counterclaims be, and hereby is, **GRANTED in part and DENIED in part** so that all of Mr. Homburger's counterclaims are dismissed except that Mr. Homburger may proceed with his counterclaim under the Interstate Commerce Act for actual damage to his property.