PALMER, J.
Braid Sales & Marketing, Inc. appeals from a final judgment entered in its favor against R & L Carriers, Inc., which limited its damage claim to $3,612.55. Concluding that the trial court improperly applied the limitations of the Carmack Amendment[1] to this case, we reverse the final judgment.
Braid sued R & L, an interstate carrier of goods, seeking compensation in excess of $15,000.00 for damages to machinery shipped via R & L. Count I alleged a claim for negligence, and Count II alleged a claim for breach of an oral contract pursuant to which R & L promised to pay Braid the full cost of repairing the machinery. Prior to trial, the trial court granted R & L’s motion to dismiss Count II, holding that the breach of contract claim was preempted by the provisions of the Car-mark Amendment. The matter proceeded to trial on Count I before the court sitting without a jury. Upon review of the evidence, the court found that R & L had established its affirmative defense that, *592 pursuant to the Carmack Amendment, Braid was not entitled to recover its full damages on Count I, but instead was limited to recovery of $3,612.55, which represented five times the amount of its shipping costs. We disagree.
R & L had the burden to prove at trial its affirmative defense based upon the Carmack Amendment. One of the requirements for the application of the Car-mack Amendment is that the carrier involved maintain a tariff with the Interstate Commerce Commission. See Rohner Gehrig Co. v. Tri-State Motor Transit, 950 F.2d 1079 (5th Cir.1992). While the parties agreed -that R & L was the carrier involved in the shipment at issue, the record demonstrates that the tariff introduced into evidence was not applicable to R & L because the participating carriers listed in the tariff did not include R & L. R & L contends that it adequately authenticated the tariff by having its employee testify that this tariff was applicable to R & L. However, since the tariff document unambiguously shows, on its face, that it is not applicable to R & L, that testimony could not alter the terms of the document. Since R & L did not establish that it maintained any tariff with the Interstate Commerce Commission, it failed to meet its burden of proving its affirmative defense. Accordingly, the damages suffered by Braid were not limited by the Carmack Amendment.
The trial court arguably reached the same conclusion in its final judgment, although not explicitly, when it held that “the 1997 tariff introduced into evidence, the controlling tariff in this action, did not list the named defendant, R & L as the carrier, but instead listed Gator Freight-ways, Inc., as the carrier.” However, after reaching that conclusion, the trial court nonetheless found the 1997 tariff applicable by holding that Braid waived any issue as to the applicability of the tariff “by its prior conduct, and by introducing the 1999 amendment to the tariff in Plaintiffs case.” We disagree. Although the trial court failed to specify what “prior conduct” constituted waiver, our review of the record shows no prior conduct which would legally constitute a waiver, and R & L does not argue that any such prior conduct existed.
In addition, the trial court’s conclusion that Braid waived its argument regarding the applicability of the tariff by introducing the 1999 amendment to the tariff in Braid’s case is erroneous. Braid’s introduction of that document occurred after the trial court had already overruled its objection to the admissibility and relevancy of the 1977 tariff. Accordingly, its introduction could not legally constitute a waiver of the argument previously made.
R & L further argues that the terms of this tariff were incorporated into the agreement between the parties by the bill of lading. However, that bill of lading merely states that it is subject to “tariffs in effect on the date of issue of the bill of lading”. As noted above, R & L failed to prove that any tariff relating to R & L was in effect on the date of the bill of lading.
In summary, the trial court erred in applying the Carmack Amendment to limit Braid’s claim to damages for five time the shipping cost. Instead, Braid was entitled to recover whatever damages were proximately caused by the negligence of R & L.
Braid also challenges the trial court’s dismissal of Count II of its amended complaint.[2] Count II set forth an inde- *593 pendent claim for a breach of an oral agreement entered into between R & L and Braid after the shipment was completed. Braid argued that since the claim was based upon conduct occurring after the shipment was completed it was not legally precluded by the Carmack Amendment. R & L responded that dismissal was warranted because the Carmack Amendment provided the sole remedy and preempted all other federal or state claims and remedies relating to the loss or damage to cargo, citing to Rini v. United Van Lines, Inc., 104 F.3d 502 (1st Cir.1997).
Rini involved a plaintiffs attempt to recover on claims which included an allegation that while negotiating plaintiffs damage claim the shipper engaged in unfair and deceptive acts in violation of Massachusetts law, and intentionally inflicted emotional distress. The Rini decision noted that the Supreme Court of the United States had not clarified the extent to which the Carmack Amendment preempted other claims, but went on to rule that state statutes are preempted by the Carmack Amendment if they in any way enlarge the responsibility of the carrier for loss or at all affect the grounds of recovery or the measure of recovery. The court further construed the Carmack Amendment and the set of federal regulations that complement it as covering not only the actual transport of goods, but also the claims process:
Preempted state law claims ... include all liability stemming from damage or loss of goods, liability stemming from the claims process, and liability related to the payment of claims ...
104 F.3d at 505-506. At the same time the Rini court recognized that liability arising from separate harms are not preempted:
On the other hand, liability arising from separate harms — apart from the loss or damage of goods — is not preempted. For example, if an employee of the carrier assaulted and injured the shipper, state law remedies would not be preempted. Similarly, a claim of intentional infliction of emotional distress alleges a harm to the shipper that is independent from the loss or damage to goods and, as such, would not be preempted.

Id.

Here, Braid’s claim of an alleged oral contract between the parties for payment of repairs, entered into after the shipment was completed, constitutes a separate harm which is independent from the loss or damage to goods. As such the claim is not preempted. Neither the Car-mack Amendment nor public policy support a carrier’s attempt to evade the legal responsibilities voluntarily assumed by entry into an independent contract.[3]
REVERSED and REMANDED.
THOMPSON, C.J., and SAWAYA, J., concur.

. The Carmack Amendment, 49 U.S.C. § 14706, generally limits a motor carrier's liability for loss or damage to an interstate commercial shipment pursuant to a tariff, a document which sets forth a liability limit which is applicable absent a customer exercising the option to purchase higher liability limits.

. Although we have concluded that the Car-mack Amendment was not applicable in this case because R & L failed to prove that any tariff was on file related to R & L, that argument was not made by Braid in opposition to the motion to dismiss and, accordingly, it *593 waived that argument in connection with Count II.

. The federal cases which have discussed the scope of preemption of the Carmack Amendment are not in agreement as to what claims are preempted by the Carmack Amendment, even in the absence of an independent contract. For example, in Mesta v. Allied Van Lines International, Inc., 695 F.Supp. 63 (D.Mass.1988), the court held that a claim against the carrier for deceptive acts and practice was based not on loss of property but on the carrier's actions in investigating and *594 responding to the shipper's claim was not preempted. Similarly, in Sokhos v. Mayflower Transit, Inc., 691 F.Supp. 1578 (D.Mass. 1988), the court held that the Carmack Amendment did not preempt state law actions based on a carrier's improper handling of the plaintiff's claims for damage to goods. In American Transfer and Storage Co. v. Brown, 584 S.W.2d 284 (Tex.Civ.Ct.App.1979), rev. on other grounds, 601 S.W.2d 931 (1980), cert. denied, 449 U.S. 1015, 101 S.Ct. 575, 66 L.Ed.2d 474, the court held that the Carmack Amendment does not preempt a claim under the Texas Deceptive Trade Practices Act for misrepresentations made prior to the contract of carriage.
On the other hand, the court in United Van Lines, Inc. v. Homburger, 932 F.Supp. 139, (W.D.N.C.1996), held that a shipper's state law counterclaims against the carrier for pain and grief caused by the carrier’s inept handling of the move plus the agent’s false representation regarding billing were preempted by Carmack Amendment. Similarly, in Mar-getson v. United Van Lines, Inc., 785 F.Supp. 917 (D.N.M.1991), the court found that claims for fraud against carrier were preempted by the Carmack Amendment where the damages claimed as a result of alleged fraud were for injury to and loss of use of goods. In Pietro Culotta Grapes Ltd.v. Southern Pacific Transp. Co., 917 F.Supp. 713 (E.D.Cal.1996) the court similarly held that preemption related to claims based on conduct occurring after shipment.