MIRACLE OF LIFE, LLC; Brooke Faville; Dr. Leonard Coldwell & Dr. Thomas Hohn, Plaintiffs,

v.

NORTH AMERICAN VAN LINES, INC.; Atlantic Transfer & Storage Co.; and Stevens International Forwarders, Defendants.

No. CA No. 2:04-0307-23.

United States District Court, D. South Carolina, Charleston Division.

Feb. 11, 2005.

Jennifer L. North, Sullivan's Island, SC, for Plaintiffs.

R. Hawthorne Barrett, Columbia, SC, for Defendants.

## ORDER

DUFFY, District Judge.

This matter is before the court upon three pending motions: (1) Defendant Stevens International Forwarders's ("Stevens") Motion to Dismiss pursuant to Fed. R.Civ.P. 12(b)(6); (2) Defendant Atlantic Transfer and Storage's ("ATS") Motion for Judgment on the Pleadings pursuant to Fed.R.Civ.P. 12(c); and (3) Defendant North American Van Lines' s ("NAVL") Motion for Judgment on the Pleadings pursuant to Fed.R.Civ.P. 12(c). For the reasons set forth herein, Defendants' motions are denied. Plaintiffs are afforded

fifteen days from the date of the issuance of this Order to file an amended complaint.

## BACKGROUND

Plaintiffs Miracle of Life, LLC, Brooke Faville, and Dr. Leonard Coldwell are owners of "TimeOut System," which provides health and stress relief services to individuals. Plaintiffs also sell licenses of TimeOut Centers and the TimeOut System, support, and related products to other health care providers. Around November 27, 2001, Plaintiff Dr. Thomas Hohn bought a Time Out Center and the furniture, appurtenances, and products to continue this business in Germany, his country of residence. Dr. Hohn was to be the general manager of TimeOut Centers in Europe. Dr. Hohn agreed to pay $100,000 per·year for use of the System, and ordered products from Miracle of Life, LLC in excess of $688,950 for the initial inventory necessary to conduct business.

Plaintiff Brooke Faville made arrangements to ship the office furniture and other items from Charleston, South Carolina to Germany with ATS, a company that Plaintiffs allege was an agent of NAVL. On December 18, 2002, Dr. Hohn received a partial shipment of his goods. Plaintiffs claim that many of the items Dr. Hohn had ordered were missing, and others were damaged beyond repair, making his new business venture untenable. After attempts to resolve this with the respective insurance carriers,[1] Plaintiffs instigated this action on December 15, 2003 alleging the following causes of action: (1) breach of contract (Count One); (2) breach of contract accompanied by a fraudulent act (Count Two); (3) civil conspiracy (Count Three); (4) conversion (Count Four); (5) fraud and misrepresentation (Count Five); (6) negligence (Count Six); (7) promissory estoppel (Count Seven); and (8) violation

---

1. Plaintiffs have brought a separate action (C.A. No. 2:04–2181–23) against Pac Global Insurance Brokerage, Inc. alleging breach of contract and bad faith refusal to pay a claim.

of the South Carolina Unfair Trade Practices Act (Count Eight).[2]  ATS removed the case to this court on February 3, 2004 on the basis that the Carmack Amendment to the I.C.C. Termination Act, 49 U.S.C. §§ 13101 *et seq.*, preempts each of Plaintiffs' causes of action.  (Notice of Removal, ¶ 4).[3]

## STANDARD OF REVIEW

Each Defendant seeks dismissal pursuant to Fed.R.Civ.P. 12(c) or Fed.R.Civ.P. 12(b)(6).[4]  The standard of review governing dismissal under either rule is the same.  *See Burbach Broad. Co. of Delaware v. Elkins Radio Corp.*, 278 F.3d 401, 406 (4th Cir.2002).  "A motion to dismiss under [Rule 12(c)] tests the sufficiency of a [claim], it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  *Republican Party of North Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir.1992).  The court should grant a motion for judgment on the pleadings under Rule 12(c) or for dismissal under Rule 12(b)(6) "only ... if, after accepting all well pleaded allegations in the [non-moving party's claim] as true and drawing all reasonable factual inferences from those facts in [that party's favor], it appears certain that the [non-moving party] cannot prove any set of facts in support of [its] claim entitling [it] to relief."  *See Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir.1999) (evaluating Rule 12(b)(6) motion); *Bruce v. Riddle*, 631 F.2d 272, 274 (4th Cir.1980) (applying standard under Rule 12(c)).

## ANALYSIS

The Carmack Amendment[5] provides for liability of carriers under receipts and bills of lading in interstate commerce, and establishes the right of shippers to bring civil actions in federal district court against a carrier alleged to have caused "loss or damage" to transported goods.  *See* 49 U.S.C. § 14706(d).[6]  The Carmack

2.  Plaintiffs originally sued ATS and NAVL, and joined Defendant Stevens by filing an Amended Complaint on October 4, 2004.

3.  Plaintiffs never sought to remand this case to state court.

4.  NAVL has titled its motion as one for judgment on the pleadings pursuant to Fed. R.Civ.P. 12(c), but also cites the summary judgment rule in the introductory paragraph of its memorandum.  Because the motion was titled one for judgment on the pleadings, and because NAVL refers exclusively to the 12(c) standard throughout its memorandum, the court considers the motion as one for judgment on the pleadings.

5.  As NAVL points out, the Carmack Amendment, originally an amendment to the Interstate Commerce Act, was recodified by the I.C.C. Termination Act of 1995.  This change, which reorganized much of the Interstate Commerce Act, was effective January 1, 1996.  The recodificaton worked no substantive change on the Carmack Amendment.  *See, e.g., Ward,* 231 F.3d at 138 n. 1.

6.  The Carmack Amendment states in relevant part:

A carrier providing transportation or service subject to jurisdiction under subchapter I or III of chapter 135 shall issue a receipt or bill of lading for property it receives for transportation under this part.  That carrier and any other carrier that delivers the property and is providing transportation or service subject to jurisdiction under subchapter I or III of chapter 135 or chapter 105 are liable to the person entitled to recover under the receipt or bill of lading.  The liability imposed under this paragraph is for the actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported in the United States or from a place in the United States to a place in an adjacent foreign country when transported under a through bill of lading....  Failure to issue a receipt or bill of lading does not affect the liability of a carrier.  A delivering carrier is deemed to be the carrier performing the line-haul transportation nearest the destination but does not include a carrier providing only a switching service at the destination.
49  U.S.C.A. § 14706(a)(1).

Amendment "makes a carrier liable for the actual loss or injury to the property it transports." *Ward v. Allied Van Lines, Inc.*, 231 F.3d 135, 138 (4th Cir.2000) (internal quotation marks omitted).

■ Since its inception, the Supreme Court has interpreted the Carmack Amendment as broadly occupying the entire interstate shipment field of commerce.

> [The Carmack Amendment] embraces the subject of the liability of the carrier under a bill of lading which he must issue, and limits his power to exempt himself by rule, regulation, or contract. Almost every detail of the subject is covered so completely that there can be no rational doubt but that Congress intended to take possession of the subject, and supersede all state regulation with reference to it.

*Adams Express Co. v. Croninger*, 226 U.S. 491, 505–06, 33 S.Ct. 148, 57 L.Ed. 314 (1913); *see also Georgia, Fl., & Ala. Railroad Co. v. Blish Milling Co.*, 241 U.S. 190, 196, 36 S.Ct. 541, 60 L.Ed. 948 (1916) (holding that The Carmack Amendment embraces "all losses resulting from any failure to discharge a carrier's duty as to any part of the agreed transportation."). It is widely accepted that the Amendment preempts a shipper's state and common law claims against a carrier for loss or damage incurred to goods during shipment. *See Shao v. Link Cargo (Taiwan), Ltd.* 986 F.2d 700, 704, 706 (4th Cir.1993) ("[T]he Carmack Amendment was intended by Congress to create a national uniform policy regarding the liability of carriers under a bill of lading for goods lost or damaged in shipment.... Allowing a shipper to bring common law breach of contract or negligence claims against a carrier for such loss or damage conflicts with this policy."); *see also Smith v. UPS*, 296 F.3d

1244, 1247–48 (11th Cir.2002) (concluding that claims based on loss or misdelivery of packages are preempted by the Carmack Amendment); *Gordon v. United Van Lines, Inc.*, 130 F.3d 282, 288 (7th Cir. 1997) (concluding that state law claims concerning damage to goods lost in transit, fraud in the formation of the contract, and conduct in the claims process are preempted by the Carmack Amendment); *Hughes Aircraft Co. v. N. Am. Van Lines*, 970 F.2d 609, 613 (9th Cir.1992) ("It is clear that the Carmack Amendment established a uniform national liability policy for interstate carriers" which "preempts any state common law action against [a carrier] acting solely as a common carrier."); *Underwriters at Lloyds of London v. N. Am. Van Lines*, 890 F.2d 1112, 1121 (10th Cir. 1989) (holding that cause of action for negligent loss of goods shipped pursuant to a bill of lading superseded); *Hopper Furs, Inc. v. Emery Air Freight Corp.*, 749 F.2d 1261, 1264 (8th Cir.1984); *Rehm v. Baltimore Storage Co.*, 300 F.Supp.2d 408 (W.D.Va.2004) (holding that the Carmack Amendment preempts all state law claims for fraud, misrepresentation, and unfair trade practices); *Burlington Air Express, Inc. v. Truck Air of the Carolinas, Inc.*, 8 F.Supp.2d 508, 511–12 (D.S.C.1998).

Plaintiffs appear to concede that the Carmack Amendment preempts their breach of contract and negligence claims (Counts One, Two, Six, and Seven). *See* Pl. Opp. to Stevens at 10 ("In the case at hand, Plaintiffs will not contest that the breach of contract and claims of negligence are encompassed within Carmack Amendment claims."). Plaintiffs argue, however, that while the negligence and breach of contract claims are preempted, the fraud, conversion, and unfair trade practices claims are not preempted because they involve intentional wrongdoing and are "outside the subject of contracts."[7] (Opp.

---

**7.** Plaintiffs never specifically concede that their promissory estoppel or civil conspiracy claims are preempted by the Carmack

Amendment. Because these claims also involve the damage or loss of property by carri-

To Stevens at 13–14). In making this argument, Plaintiffs rely heavily on the idea that the Carmack Amendment has been given "unwarranted preemptive power" by most courts, and highlight that the need to correct this inaccurate interpretation is imperative. *Id.; see also* Pl. Opp. to NAVL at 10 ("Plaintiffs endeavor to illustrate the inequitable result of adhering to some circuit courts' interpretations of the preemptive scope of Carmack.")

■ Unfortunately for Plaintiffs, this court is not charged with making policy decisions regarding what the proper scope of the Carmack Amendment is. Rather, the court must follow the dictates of the Supreme Court and the Fourth Circuit Court of Appeals, and the wealth of other courts that have considered the questions presented in this case. Because almost all courts considering this issue have concluded that the Carmack Amendment has great preemptive force—including preemptive force over common law fraud, conversion, and unfair trade practices claims—the court rejects Plaintiffs' arguments to the contrary.[8] *See, e.g., Smith v. United Parcel Service,* 296 F.3d 1244, 1249 (11th Cir.2002) (finding that a fraud claim was preempted by the Carmack Amendment); *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 383 (5th Cir.1998)

(holding that the Carmack Amendment preempted Plaintiff's claims for damages based on the carrier's alleged "egregious conduct in the course of discharging its duties under the shipping contract."); *Rini v. United Van Lines, Inc.,* 104 F.3d 502, 506 (1st Cir.1997) (holding that a shipper's state law claim for violation of the Massachusetts Consumer Protection Act was preempted by the Carmack Amendment); *Hughes,* 829 F.2d at 1414–15 (holding that the Carmack Amendment preempts a conversion claim); *Rehm,* 300 F.Supp.2d at 408 (holding that the Carmack Amendment preempts all tort, breach of contract, and state unfair competition claims); *Richter,* 110 F.Supp.2d at 406 (holding that Carmack Amendment preemption applies to state law claims for fraud, misrepresentation, and unfair trade practices.); *United Van Lines v. Shooster,* 860 F.Supp. 826, 828–29 (S.D.Fla.1992) (finding that the Carmack Amendment preempted a claim based on an alleged fraudulent estimate made to induce a contract).

Although Plaintiffs appear to contend in the alternative that their state law claims state a prima facie case under the Carmack Amendment, the court believes that, rather than re-characterizing Plaintiffs' claims, the more prudent course of action is to grant Plaintiffs leave to amend their

---

ers, they are preempted. *See, e.g., Duerrmeyer v. Alamo Moving & Storage One, Corp.,* 49 F.Supp.2d 934, 936–7 (W.D.Tex.1999) (finding all of a plaintiff's state law claims, including promissory estoppel, preempted by the Carmack Amendment); *Reeves v. Mayflower Transit Inc.,* 87 F.Supp.2d 1251, 1254 (M.D.Ala.1999) (finding all of a plaintiff's state law claims, including civil conspiracy, preempted by the Carmack Amendment).

**8.** Defendant Stevens raises the additional argument that Plaintiffs claims are preempted by The Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. app. § 1300 *et seq.* While the precedent supporting this position is certainly less than that supporting Carmack Amendment preemption, the court finds Stevens ar-

gument persuasive. *See, e.g., Polo Ralph Lauren, L.P. v. Tropical Shipping & Const. Co., Inc.,* 215 F.3d 1217, 1220 (11th Cir.2000); *Pasztory v. Croatia Line,* 918 F.Supp. 961, 968 (E.D.Va.1996) ("[T]he rule in this circuit is that COGSA preempts state common law claims relating to goods subject to a bill of lading which are lost or damaged prior to delivery."); *Miller Export Corp. v. Hellenic Lines, Ltd.,* 534 F.Supp. 707, 710 (S.D.N.Y. 1982) ("[T]he exclusive application of COGSA cannot be avoided by couching claims in terms of negligence or other common law causes of action."). In any event, because all of Plaintiffs' claims are preempted by the Carmack Amendment, the court need not rest its ruling on COGSA preemption.

complaint to properly assert Carmack claims. *See, e.g., U.S. Aviation Underwriters, Inc. v. Yellow Freight System, Inc.,* 296 F.Supp.2d 1322, 1339 n. 17 (S.D.Ala.2003). The court's decision to grant leave rather than recharacterize is based on the fact that the court remains unsure of the precise scope of Plaintiffs' claims and requests for relief pursuant to the Carmack Amendment. Accordingly, the court will allow Plaintiffs fifteen days to file a Second Amended Complaint to cure the deficiencies described herein. Should Plaintiffs choose not to file an amended complaint, the court will grant the pending motions to dismiss or motions for judgment on the pleadings.[9]

### CONCLUSION

It is therefore **ORDERED,** for the foregoing reasons, that Defendant Stevens Motion to Dismiss pursuant to Fed. R.Civ.P. 12(b)(6) is **DENIED.** It is further **ORDERED** that Defendant ATS's Motion for Judgment on the Pleadings pursuant to Fed.R.Civ.P. 12(c) is **DENIED.** It is further **ORDERED** that Defendant NAVL's Motion for Judgment on the Pleadings is **DENIED.** Plaintiffs are afforded **fifteen days** from the date of the issuance of this Order to file a Second Amended Complaint curing the deficiencies described herein.

**AND IT IS SO ORDERED.**

---

9. Defendants have raised a number of substantive issues surrounding the propriety of any claims Plaintiffs might assert under the Carmack Amendment. For example, Defendant Stevens informs the court that he intends to move for dismissal under Carmack's statute of limitations. (Stevens Mem. at 4). Defendant NAVL seeks judgment on the pleadings on Plaintiffs' request for attorney's fees and consequential, incidental, or punitive damages on the grounds that these requests are barred by the Carmack Amendment. (NAVL Mem. at 12–13). Because the court grants Plaintiffs leave to amend their complaint and properly assert Carmack claims, the court refrains from ruling on these substantive issues. Defendants are free to renew their motions after Plaintiffs have filed a properly-pled complaint.